887 A.2d 1029

# ANNE ARUNDEL COUNTY BOARD OF EDUCATION

v.

## David NORVILLE.

### No. 6, Sept. Term, 2005.

Court of Appeals of Maryland.

Dec. 12, 2005.

`.`

96

Andrew J. Murray, Sr. Asst. Cty. Atty. (Linda M. Schuett, Cty. Atty., Annapolis, on brief), for petitioner/cross-respondent.

David C. Slade (Law Offices of David C. Slade & Associates, Bowie, on brief), for respondent/cross-petitioner.

B. Darren Burns, Reese and Carney, LLP, Annapolis, Beth Mellen Harrison, Francis D. Murnaghan, Jr., Appellate Advocacy Fellow, Public Justice Center, Deborah A. Jeon, ACLU Foundation of Maryland, Baltimore, amicus curiae.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

The case is a suit alleging age discrimination based upon the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634 (Supp. III 1994),[1] Md.Code (1957, 2003 Repl.Vol., 2005 Cum.Supp.) Art. 49B, § 16(a),[2] common law wrongful discharge and intentional infliction of emotional distress filed by David Norville, a media specialist employed by the Anne Arundel County Board of Education (the Board) against the Board. Because the ADEA claim was adjudicated on the merits in a suit filed by Norville in the United States District Court for the District of Maryland, *Norville v. Anne Arundel County Bd. of Educ.*, No. Civ.A. MJG–99–764, 1999 WL 1267696 (D.Md. Nov.23, 1999), we shall hold that this action is barred by the principles of res judicata.

---

**1.** Unless otherwise indicated, all subsequent statutory references herein shall be to 29 U.S.C. § 621 *et seq.*

**2.** Unless otherwise indicated, all subsequent statutory references herein shall be to Art. 49B.

## I.

David Norville was employed by the Board as a Media Production Specialist from 1979 until 1998. Norville received a memorandum from his supervisor, Don Cramer, accusing him of insubordination on or about June 24, 1998. The Board sent Norville a letter in July 1998 explaining that it was reducing the number of positions in Norville's department for budgetary reasons. The Board discharged Norville from his employment as a Media Production Specialist on September 30, 1998.

Norville filed an age discrimination complaint, grounded in ADEA, with the Equal Employment Opportunity Commission (EEOC) against the Board. Following an investigation, the EEOC closed its file, and advised Norville that it was "unable to conclude that the information obtained establishes violations of statutes." The EEOC added, however, that its action did not certify that the Board was in compliance with statutory requirements and informed Norville of his "right to sue" under federal law, either in state or federal court, within 90 days of the notice.

Norville filed a complaint on March 18, 1999, which he amended on June 2, 1999, against the Board in the United States District Court for the District of Maryland, alleging six counts: violation of the Age Discrimination in Employment Act (ADEA),[3] violation of Art. 49B,[4] unjust enrichment, quantum meruit, wrongful discharge, and intentional infliction of

---

3. 29 U.S.C. § 623(a), Prohibition of age discrimination, Age Discrimination in Employment Act, states, in pertinent part, as follows:
   "It shall be unlawful for an employer
   (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

4. Article 49B, § 16(a), Fair Employment Practices Act, prohibits termination of employment for discriminatory reasons. Article 49B, § 16(a) states in pertinent part as follows:

emotional distress.[5]  The Board argued that it is an agency of
the State of Maryland, and thus enjoys immunity from suit
under the Eleventh Amendment to the United States Consti-
tution.[6]  Norville contended that Eleventh Amendment immu-
nity was unavailable under ADEA because the Board was not
an arm of the State [7] and hence was not entitled to immunity
as a matter of law.

The District Court, in a Memorandum Opinion and Order,
noted that on October 13, 1999, the Supreme Court had heard

---

"(a) Failure to hire or discharged; reduced status.—It shall be an
*unlawful employment practice for an employer:*
(1) To fail or refuse to hire or to discharge any individual, or
otherwise to discriminate against any individual with respect to the
individual's compensation, terms, conditions, or privileges of employ-
ment, because of such individual's race, color, religion, sex, age,
national origin, martial status, sexual orientation, genetic informa-
tion, or disability unrelated in nature and extent so as to reasonably
preclude the performance of the employment, or because of the
individual's refusal to submit to a genetic test or make available the
results of a genetic test."

5.  Norville also named Cramer in his individual capacity, alleging, *inter
alia*, that Cramer harassed him in order to fabricate a record of
unsatisfactory performance.  The District Court dismissed Norville's
claim against Cramer on the ground that "the ADEA does not allow
individual liability to be imposed on an employee, based on the Fourth
Circuit's opinion in *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th
Cir.1994)."  Norville did not appeal, but instead filed suit against
Cramer in the Circuit Court for Anne Arundel County, alleging the
identical claims.  The Circuit Court dismissed Norville's claims against
Cramer, and Norville did not appeal the dismissal of his claims against
Cramer to the Court of Special Appeals.  Norville's claims against
Cramer are not included in his petition for writ of certiorari, and thus,
the issue is not before us.

6.  The Eleventh Amendment to the United States Constitution states that
"the Judicial power of the United States shall not be construed to
extend to any suit in law or equity, commenced or prosecuted against
one of the United States by Citizens of another State, or by Citizens or
Subjects of any Foreign State."  The States' Eleventh Amendment
immunity applies to suits against a State by its own citizens.  *See
Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39
L.Ed.2d 662 (1974); *Hans v. Louisiana*, 134 U.S. 1, 15–16, 10 S.Ct. 504,
507, 33 L.Ed. 842 (1890).  *See also Chisholm v. Georgia*, 2 U.S. 419,
437–446, 2 Dall. 419, 1 L.Ed. 440 (1793) (Iredell, J., dissenting); The
Federalist No. 39, at 245 (James Madison) (Clinton Rossiter ed., 1961).

7.  We shall use "arm of the State" and "State agency" interchangeably.

oral argument in *Kimel v. Bd. of Regents,* 139 F.3d 1426 (11th Cir.1998), *cert. granted,* 525 U.S. 1121, 119 S.Ct. 901, 142 L.Ed.2d 901 (1999), *aff'd,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), presenting two issues bearing on the resolution of the issue before the District Court. The issues before the Supreme Court were whether the ADEA contained a clear abrogation of the States' Eleventh Amendment immunity from suit by individuals and whether the extension of the ADEA to the States was a proper exercise of Congress's power under § 5 of the Fourteenth Amendment, thereby constituting a valid exercise of congressional power to abrogate the States' Eleventh Amendment immunity from suit by individuals. The District Court stayed the action against the Board pending the *Kimel* decision.

Following the Supreme Court's holding in *Kimel* that the ADEA did not constitute a proper abrogation of Eleventh Amendment immunity pursuant to § 5 of the Fourteenth Amendment, 528 U.S. 62, 82–83, 120 S.Ct. 631, 645, 145 L.Ed.2d 522,[8] the District Court lifted the stay and, pursuant to Fed R. Civ. P. 12(b)(6), dismissed all Norville's remaining federal claims with prejudice, and the state law claims without prejudice. The District Court ruled as follows:

"By separate Order issued this date, the Court has dismissed all remaining claims.

1. Judgment shall be, and hereby is, entered in favor of Defendants Board of Education, Anne Arundel County, Maryland and Don Cramer against Plaintiff David Norville *dismissing all federal claims with prejudice* and all state law claims without prejudice."

The District Court made clear that this Order constituted a final judgment.

---

8. In *Kimel,* the Supreme Court reasoned that ADEA is not "appropriate legislation" under § 5 of the Fourteenth Amendment, and thus, concluded that ADEA is not a valid abrogation of the States' Eleventh Amendment immunity. 528 U.S. at 82–91, 120 S.Ct. at 645–50. *See also* U.S. Const. amend. XIV, § 5.

Norville did not appeal the judgment of the District Court. Instead, Norville filed suit against the Board and Cramer in the Circuit Court for Anne Arundel County, alleging age discrimination in violation of Art. 49B, unjust enrichment, quantum meruit, common law wrongful discharge, and intentional infliction of emotional distress. The Circuit Court dismissed the unjust enrichment and quantum meruit claims with prejudice and the remaining claims, without prejudice.

Norville then filed an Amended Complaint in which he alleged violations of Article 49B, wrongful discharge, and intentional infliction of emotional distress as well as claims alleging violation of ADEA. The ADEA claims against the Board and Cramer were the same claims that the District Court had dismissed with prejudice. In his Amended Complaint, Norville alleged, *inter alia*, as follows:

"13.   Defendant [the Board] willfully discriminated against the Plaintiff on account of his age in violation of Section 4(a)(1) of the ADEA, 29 U.S.C. 623(a)(1) with respect to its decision to discharge the Plaintiff from employment.

34.   Defendant [Cramer] willfully discriminated against the Plaintiff on account of his age in violation of Section 4(a)(1) of the ADEA, 29 U.S.C. 623(a)(1) with respect to its decision to discharge the Plaintiff from employment."

In response, pursuant to Md. Rule 2–323(g), the Board and Cramer raised several affirmative defenses, including "res judicata, as a result of the dismissal of the prior federal court suit" and "sovereign and/or governmental immunity, as well as the failure to give proper notice under the Maryland Torts Claim Act."

The Circuit Court granted the Board's Motion to Dismiss the intentional infliction of emotional distress claim, all other state law claims against the Board and Cramer, and the ADEA claim against Cramer. Norville's ADEA claim against the Board was the only claim to survive this Motion to Dismiss.

Prior to trial, the Board requested that the Circuit Court rule on the sovereign immunity issue. The Board argued that it was a State agency for the purpose of sovereign immunity.

The Circuit Court dismissed Norville's ADEA claim, holding that the Board is a State agency, and as such, the Eleventh Amendment bars the suit against the Board. In regard to the federal cause of action, the court noted as follows:

"In the instant case, Plaintiff's ADEA claim was dismissed in federal court on the basis of the Board's Eleventh Amendment immunity from suit. . . . *The United States District Court for the District of Maryland has already held that the Board enjoys governmental immunity from ADEA claims that Plaintiff brought in federal court.*"

The Circuit Court concluded as follows:

"The Eleventh Amendment protects the States from suit unless they have explicitly waived their immunity. Maryland has clearly not waived its immunity from suits brought under the ADEA, and this immunity applies to private actions brought against its agencies in both federal and state courts. Accordingly, the Anne Arundel County Board of Education has a constitutional immunity to suits brought in State courts under the ADEA."

Norville noted a timely appeal to the Court of Special Appeals. That court affirmed the judgment of the Circuit Court, holding that the Circuit Court did not err in dismissing the Art. 49B claim and the common law wrongful discharge claim.[9] *Norville v. Anne Arundel County Bd. of Educ.,* 160 Md.App. 12, 862 A.2d 477 (2004). With respect to the ADEA claim, the Court of Special Appeals held that the Board was an arm of the State under the Eleventh Amendment, and that Md.Code (1973, 2002 Repl.Vol., 2004 Cum.Supp.) Courts and Judicial Proceedings Article, § 5–518(c) [10] waived the Board's sovereign immunity defense to "any claim" of $100,000 or less, including claims brought by individuals under the ADEA.[11] *Id.*

---

9. Norville has not appealed the dismissal of his State law claims to this Court.

10. Unless otherwise noted, all subsequent statutory references on this matter shall be to Courts and Judicial Proceedings Article, § 5–518(c).

11. Although the Court of Special Appeals held that a county board of education constitutes a State agency for purposes of sovereign immuni-

We granted the Board's petition for writ of certiorari to decide the following questions:

1. "Did the Court of Special Appeals err in construing [Courts and Judicial Proceedings Article] § 5–518, which waives the sovereign immunity of local boards of education for 'any claim' up to $100,000, as a waiver of the Board's immunity from suit under the Eleventh Amendment against an ADEA action filed in state court?

2. Did the Court of Special Appeals err by failing to apply to a federal cause of action filed in state court the rules of strict construction that are applicable to determining whether a state has waived its immunity under the Eleventh Amendment to a suit filed in federal court?"

We granted Norville's cross-petition for certiorari to decide the following question:

"Whether the Court of Special Appeals erred in holding that the Anne Arundel County Board of Education is entitled to sovereign immunity under the U.S. Constitution because the Board is an 'arm of the State'?"

## II.

██ We shall not reach these questions in deciding this case based on the principles of res judicata. Norville may not bring the same ADEA claim against the Board that a court of competent jurisdiction has dismissed with prejudice.

Although the issue of res judicata was not raised directly in the certiorari petition, nevertheless, we may determine whether res judicata bars Norville's claims. *See Lizzi v. Washington Metro. Area Transit Auth.*, 384 Md. 199, 205–06, 862 A.2d 1017, 1021–22 (2004). Md. Rule 8–131(a) states as follows:

"(a) Generally. The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–

---

ty under the Eleventh Amendment, we do not reach the issue because as we shall explain, *infra*, the matter is barred by the principles of res judicata. The United States District Court for the District of Maryland, in dismissing Norville's claim, necessarily ruled that the Board was a State agency.

322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."

The Board raised the defense of res judicata as an affirmative defense pursuant to Md. Rule 2–323(g) in its Answer to the Amended Complaint filed in the Circuit Court. The Circuit Court, in dismissing Norville's claims, arguably relied on the principles of res judicata, in part, explaining that "The United States District Court for the District of Maryland has already held that the Board enjoys governmental immunity from ADEA claims that Plaintiff brought in federal court."

We have decided cases previously on res judicata grounds, even though res judicata was not raised in the petition for writ of certiorari. In *Lizzi*, the Circuit Court dismissed an employee's Family Medical Leave Act (FMLA) claim against his employer, Washington Metropolitan Area Transit Authority (WMATA), on res judicata grounds, because the United States Court of Appeals for the Fourth Circuit had held in a prior action that Lizzi's claim against WMATA was barred because of sovereign immunity. *See id.* at 204, 862 A.2d at 1020–21. The Court of Special Appeals affirmed on the ground of sovereign immunity rather than res judicata.[12] *Id.* at 205, 862 A.2d at 1021. Although we did not grant certiorari on the res judicata issue, we held nevertheless that Lizzi's FMLA claim was barred by the res judicata effect of the Fourth Circuit's decision in *Lizzi v. Alexander*, 255 F.3d 128 (4th Cir.), *cert. denied*, 534 U.S. 1081, 122 S.Ct. 812, 151 L.Ed.2d 697 (2002),

---

**12.** The Court of Special Appeals, in affirming the Circuit Court on sovereign immunity grounds, discussed the res judicata issue briefly, but did not rely upon it: "Appellees have not asserted that the ADEA claims against the Board, filed in state court, are barred by res judicata, based on the federal court's disposition of the ADEA claim filed in federal court." *Norville*, 160 Md.App. at 22, 862 A.2d at 483 n. 6.

*reh'g denied,* 535 U.S. 952, 122 S.Ct. 1352, 152 L.Ed.2d 254 (2002). *Id.* at 213, 862 A.2d at 1025–26. As we stated in *Lizzi,* "we find it preferable to address the res judicata issue at this point, so as 'to avoid the expense and delay of another appeal,' " as is expressly permitted under the language of Maryland Rule 8–131(a). *Id.* at 206, 862 A.2d at 1021–22; *see also Johnston v. Johnston,* 297 Md. 48, 59, 465 A.2d 436, 441–42 (1983) (noting that "[a]lthough the parties in the instant case have not precisely raised the issue of res judicata, we believe that in the interests of judicial economy, it is appropriate for us to address it as it is dispositive of the matter before us").

The U.S. Supreme Court took a similar approach in *Arizona v. California,* 530 U.S. 392, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) (*Arizona II* ). In that case, the Court was faced with the Quechan Tribe's claims for increased water rights from the Colorado River. *Id.* at 397, 120 S.Ct. at 2310. These claims were based on the contention that the Tribe's reservation included thousands of acres not attributed properly to the Tribe in earlier stages of the litigation. *Id.* The Court considered whether these claims for additional rights were precluded by the Court's decision in *Arizona v. California,* 373 U.S. 546, 83 S.Ct. 1468, 10 L.E.2d. 542 (1963) (*Arizona I* ). The Court noted the following with regard to raising res judicata *sua sponte:*

" '[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte,* even though the defense has not been raised. The result is fully consistent with the policies underlying res judicata: *it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste.'* "

*Arizona II,* 530 U.S. at 412, 120 S.Ct. at 2318 (citations omitted) (emphasis added). We agree.

Our view is in accord with other appellate courts that have raised res judicata *sua sponte. See, e.g., Carbonell v. La. Dept. of Health & Human Res.,* 772 F.2d 185, 189 (5th

Cir.1985); *Wilson v. United States,* 166 F.2d 527, 529 (8th Cir.1948); *Merrilees v. Treasurer,* 159 Vt. 623, 618 A.2d 1314, 1315–16 (1992); *Dakota Title & Escrow Co. v. World–Wide Steel Sys.,* 238 Neb. 519, 471 N.W.2d 430, 434–35 (1991); *Campbell v. Lake Hallowell Homeowners Ass'n.,* 157 Md.App. 504, 528, 852 A.2d 1029, 1042–43 (2004).

## III.

■ Res judicata, also known as claim preclusion or direct estoppel, means "a thing adjudicated." We explained the doctrine recently in *Lizzi v. Washington Metro. Area Transit Auth.,* 384 Md. at 206–07, 862 A.2d at 1022, as follows:

"Res judicata literally means 'a thing adjudicated,' and generally indicates 'an affirmative defense barring the same parties from litigating a second lawsuit on the same claim, or any other claim arising from the same transaction or series of transactions and that could have been—but was not—raised in the first suit.' BLACK'S LAW DICTIONARY 1336–37 (8th ed.2004). *See Alvey v. Alvey,* 225 Md. 386, 390, 171 A.2d 92, 94 (1961) (stating that 'the doctrine of res judicata is that a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit'); *see also Mackall v. Zayre Corp.,* 293 Md. 221, 228, 443 A.2d 98, 102 (1982) (stating that 'if a proceeding between parties involves the same cause of action as a previous proceeding between the same parties, the principle of res judicata applies and all matters actually litigated or that could have been litigated are conclusive in the subsequent proceeding')."

■ The doctrine of res judicata bars the relitigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter and causes of action are identical or substantially identical as to issues actually litigated and as to those which could have or should have been

raised in the previous litigation. Res judicata protects the courts, as well as the parties, from the attendant burdens of relitigation. This doctrine "avoids the expense and vexation attending multiple lawsuits, conserves the judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Murray Int'l Freight Corp. v. Graham*, 315 Md. 543, 547, 555 A.2d 502, 503–04 (1989) (quoting *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979)). Norville's claims in the Circuit Court were either fully raised and litigated in the federal District Court, or could have been raised in the federal action, and thus, are barred by the doctrine of res judicata.

■■ Res judicata restrains a party from litigating the same claim repeatedly and ensures that courts do not waste time adjudicating matters which have been decided or *could have been* decided fully and fairly. Almost 130 years ago, the Supreme Court made this point in *Cromwell v. County of Sac*, 94 U.S. 351, 358, 4 Otto 351, 24 L.Ed. 195 (1876):

> "The plea of [res judicata] applies, except in special cases, not only to the points upon which the court was required by the parties to form an opinion, and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time."

Under Maryland law, the elements of res judicata, or claim preclusion, are: (1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and, (3) that there has been a final judgment on the merits. *See Colandrea v. Wilde Lake Comm. Ass'n.*, 361 Md. 371, 392, 761 A.2d 899, 910 (2000); *Blades v. Woods*, 338 Md. 475, 478–79, 659 A.2d 872, 873 (1995); *Gertz v. Anne Arundel County*, 339 Md. 261, 269, 661 A.2d 1157, 1161 (1995); *deLeon v. Slear*, 328 Md. 569, 580, 616 A.2d 380, 385; *Cicala v. Disability Review Bd.*, 288 Md. 254, 263, 418 A.2d 205, 211 (1980). *See also*

Restatement (Second) of Judgments § 19 (1982). If a final judgment exists as to a controversy between parties, those parties and their privies are barred from relitigating any claim upon which the judgment is based.

When a federal court renders a final judgment, generally the judgment's preclusive effect is determined by federal law. *See Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1179 (4th Cir.1989); *Luxford v. Dalkon Shield Claimants*, 978 F.Supp. 221, 223 n. 6 (D.Md.1997); Restatement (Second) of Judgments § 87 (1982). In state court, the law of the state in which the judgment was rendered determines the preclusive effect. *See Rourke v. Amchem Prods., Inc.*, 384 Md. 329, 344, 863 A.2d 926, 935 (2004).

The elements of res judicata under federal law are analogous to those under Maryland law: (1) identical parties, or parties in privity, in the two actions; (2) the claim in the second matter is based upon the same cause of action involved in the earlier proceeding; and, (3) a prior and final judgment on the merits, rendered by a court of competent jurisdiction in accordance with due process requirements. *See Grausz v. Englander*, 321 F.3d 467, 472 (4th Cir.2003). *See also Kent County Bd. of Educ. v. Bilbrough*, 309 Md. 487, 493–94, 525 A.2d 232, 235 (1987). Whether the final judgment is pronounced by a federal court or a state court, its preclusive bar extends to any theory arising out of the same claim.

When a prior court has entered a final judgment as to the matter sought to be litigated in a second court, the claim analysis is usually uncomplicated. *See FWB Bank v. Richman*, 354 Md. 472, 493, 731 A.2d 916, 927 (1999). It is when a court has not ruled upon a matter directly that the analysis becomes more complex, "for then the second court must determine whether the matter currently before it was fairly included within the claim or action that was before the earlier court and could have been resolved in that court." *Id.* We have adopted the transactional test of the Restatement (Second) of Judgments § 24 to address the latter kinds of cases, which states as follows:

"What factual grouping constitutes a 'transaction' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

*Id.* at 493, 731 A.2d at 927–28 (1999); *see Gertz,* 339 Md. at 269–70, 661 A.2d at 1161; *Bilbrough,* 309 Md. at 498, 525 A.2d at 237–38. *Compare United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (federal and state causes of action are the same for the purposes of pendant jurisdiction when the causes of actions "derive from the same common nucleus of operative fact"); *see GLF Constr. Corp. v. LAN/STV,* 414 F.3d 553, 555 n. 2 (5th Cir.2005) (claims and defenses are the same for res judicata purposes when they arise from a "common nucleus of operative facts").

▆ Under the transactional approach, if the two claims or theories are based upon the same set of facts and one would expect them to be tried together ordinarily, then a party must bring them simultaneously. Legal theories may not be divided and presented in piecemeal fashion in order to advance them in separate actions. *See C.I.R. v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (quoting *Cromwell,* 94 U.S. at 352 (1876)); *Lockett v. West,* 914 F.Supp. 1229, 1233 (D.Md.1995); *Colandrea,* 361 Md. at 392, 761 A.2d at 910 (2000); *Batson v. Shiflett,* 325 Md. 684, 699, 602 A.2d 1191, 1199 (1992) (quoting *Mackall v. Zayre Corp.,* 293 Md. 221, 228, 443 A.2d 98, 102 (1982)). All matters which were litigated or *could* have been litigated in the earlier case "are conclusive in the subsequent proceeding." *Mackall,* 293 Md. at 228, 443 A.2d at 102. This proposition derives from "the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered in adversarial proceedings." *Astoria Fed. S. & L. Ass'n v. Solimino,* 501 U.S. 104, 107, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991); *accord Colandrea,* 361 Md. at 391, 761 A.2d at 909.

Res judicata pertains to the legal consequences of a judgment entered previously in the same case. *Id.* at 390–91, 761 A.2d at 909; *Burkett v. State,* 98 Md.App. 459, 465, 633 A.2d 902, 905 (1993). In applying res judicata, we are concerned simply with the final judgment entered and its concomitant consequences. *Id.* Because Norville has fully litigated the same ADEA claim against the Board, we shall examine the consequences of the federal District Court judgment in the prior case.

## IV.

Norville argues before this Court that the Board is not a State agency for Eleventh Amendment purposes, and thus it is not immune from his ADEA claim. Alternatively, Norville argues that, based on Courts and Judicial Proceedings Article, § 5–518,[13] the State has waived partially the Board's sovereign immunity. Res Judicata principles apply to Norville's ADEA claim as well as his alternative arguments, because the federal District Court previously entered judgment against Norville on the same ADEA claim.

The first element of res judicata—that the second action feature the same parties or their privies—is satisfied easily here. In federal District Court, Norville filed an action against the Board, alleging, *inter alia,* a violation of ADEA. *Norville v. Anne Arundel County Bd. of Educ.,* No. Civ.A MJG–99–764, 1999 WL 1267696, (D.Md. Nov.23, 1999). In the present action, Norville again brought suit against the Board.

---

13. Courts and Judicial Proceedings Article, § 5–518 states, in pertinent part:

"(b) *Claims for more than $100,000.*—A county board of education described under Title 4, Subtitle 1 of the Education Article, may raise the defense of sovereign immunity to any amount claimed above the limit of its insurance policy or, if self-insured or a member of a pool described under § 4–105(c)(1)(ii) of the Education Article, above $100,000.

(c) *Claims for $100,000 or less.*—A county board of education may not raise the defense of sovereign immunity to any claim of $100,000 or less."

The second element of res judicata—whether a party is raising the same claim in the current action—is met. In his state court action, Norville alleges the same claim of age discrimination, grounded in ADEA, that he alleged in his federal court action. The only new matter in Norville's state case is that he advances another theory of ADEA liability based on § 5–518. He argues that the State's waiver of the county school boards' liability for "any claim" up to $100,000 necessarily includes claims grounded in ADEA. This alternative theory, however, does not save Norville from the effects of res judicata. Even if "a number of different legal theories casting liability on an actor may apply to a given episode, [they do] not create . . . multiple claims" depriving a prior judgment of its preclusive bar. *See Lockett v. West*, 914 F.Supp. 1229, 1233 (quoting Restatement (Second) of Judgments § 24 cmt. c (1982)). "This remains true although the several legal theories depend on different shadings of facts, or would emphasize different elements of facts." *Id.* Once a set of facts has been litigated, res judicata generally prevents the application of a different legal theory to that same set of facts, assuming that "the second theory of liability existed when the first action was litigated." *See Gertz v. Anne Arundel County*, 339 Md. 261, 270, 661 A.2d 1157, 1162 (1995).

Norville's "second theory" simply is another attempt to hold the Board liable for the same case of age discrimination which the parties have litigated previously. After losing his case in federal court, Norville cannot apply his new theory to the same set of facts, when this theory is grounded upon a statute that was effective during the litigation of his prior action.[14] Norville's arguments that the Board was not entitled to assert Eleventh Amendment immunity and that § 5–518(c) partially waived the Board's sovereign immunity from a "convenient trial unit," *Gertz*, 339 Md. at 271, 661 A.2d at 1162, and therefore, could have been, and should have been, brought together in the federal District Court action. Inasmuch as

---

**14.** *See* Md.Code (1973, 1998 Repl.Vol., 2001 Cum.Supp.) Courts and Judicial Proceedings Article, § 5–518(c).

both of the arguments advanced by Norville arise out of the same set of facts, they form "the basis of the litigative unit or entity which may not be split." *Kent County Bd. of Educ. v. Bilbrough,* 309 Md. 487, 498, 525 A.2d 232, 237 (1987) (quoting Restatement (Second) of Judgments § 24 cmt. a (1982)). By splitting theories applicable to the same case, Norville seeks a second bite at the apple in the Maryland court system, which res judicata does not permit. *See Procter & Gamble Co. v. Amway Corp.,* 376 F.3d 496, 500–01 (5th Cir.2004).

Finally, the prior decision of the District Court constitutes a final judgment on the merits, which satisfies the third element of res judicata. The District Court granted the Board's Motion to Dismiss against Norville, which relied explicitly on Fed.R.Civ.P. 12(b)(6), the federal rule which authorizes a party to move for a dismissal for failure to state a claim upon which relief may be granted. When the District Court granted the Board's Motion to Dismiss and entered a final judgement against Norville, it necessarily decided that the Board was a State agency entitled to the assert Eleventh Amendment immunity. The Board would not enjoy Eleventh Amendment protection unless it was an arm of the State, and therefore, without such a finding, there would not have been a basis to dismiss the suit at the 12(b)(6) stage, at least as to Norville's ADEA claim. *See Howlett v. Rose,* 496 U.S. 356, 377, 110 S.Ct. 2430, 2443, 110 L.Ed.2d 332 (1990) (noting that "[f]ederal law makes governmental defendants that are not arms of the State, such as municipalities, liable for their constitutional violations"); *Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977) (noting that "[t]he bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances . . . but does not extend to counties and similar municipal corporations"); *Ambus v. Granite Bd. of Educ.,* 995 F.2d 992, 994 (10th Cir.1993) (noting that "unless Utah school districts are properly considered 'arms of the [S]tate,' they are amenable to suits for damages" in federal court under a federal cause of action); *Belanger v. Madera Unified Sch. Dist.,* 963 F.2d 248, 250 (9th Cir.1992) (stating

that "[Plaintiff] concedes that her [federal] claims for damages are barred if the school district is indeed a[S]tate agency for the purposes of the Eleventh Amendment"). Having relied on *Kimel* to dismiss Norville's ADEA claim, the District Court necessarily decided that the Board was an arm of the state for Eleventh Amendment purposes.

In the Judgment Order, the District Court deemed its dismissal of Norville's case to be a "final judgment." [15] Furthermore, Rule 41(b) of the Federal Rules of

---

15. As we have indicated, federal law determines the res judicata of a federal court judgment. *See Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1179 (4th Cir.1989). It is significant that the District Court considered the Board's Motion to Dismiss on Eleventh Amendment immunity grounds as a Fed.R.Civ.P. 12(b)(6) motion (dismissal for failure to state a claim upon which relief can be granted) rather than a Fed.R.Civ.P. 12(b)(1) motion (dismissal for lack of subject matter jurisdiction). When a federal court grants a motion to dismiss for lack of subject matter jurisdiction, the dismissal does not constitute an adjudication on the merits, and thus, a plaintiff is free to pursue the claim in a court having jurisdiction. *See Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir.1987); *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348 (5th Cir.1985); *Indian Creek Monument Sales v. Adkins*, 301 F.Supp.2d 555, 558–59 (W.D.Va.2004); *Young v. James*, 168 F.R.D. 24, 27 (E.D.Va.1996). Because a motion to dismiss for lack of subject matter jurisdiction is not an adjudication upon the merits, its res judicata effects apply *only* to the jurisdictional question *and not* the merits of the case. *Winslow*, 815 F.2d at 1116; *Daigle*, 774 F.2d at 1348; *Prakash v. Am. Univ.*, 727 F.2d 1174, 1181–82 (D.C.Cir.1984).

The United States Court of Appeals for the Fourth Circuit indicated recently that whether a federal court can entertain a suit consistent with the Eleventh Amendment is not an issue of subject matter jurisdiction under Article III of the U.S. Constitution. In *Constantine v. The Rectors and Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005), the Fourth Circuit rejected the defendants' contention that a federal district court is required to consider an Eleventh Amendment issue *before* addressing the sufficiency of the allegations under Rule 12(b)(6), noting that the Supreme Court's treatment of the Eleventh Amendment question in *Calderon v. Ashmus*, 523 U.S. 740, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998) "indicates that the Eleventh Amendment immunity does not limit a federal court's subject matter jurisdiction." *Id.* at 481. *See also Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir.1995) (stating that Eleventh Amendment immunity "is not truly a limit on the subject matter jurisdiction of federal courts, but a block on the exercise of that jurisdiction" and discussing differences between Eleventh Amendment immunity and subject matter jurisdiction). *But see Abril v. Virginia*, 145 F.3d 182, 184–85 (4th Cir.1998) (affirming the District

Civil Procedure provides that the dismissal of an action upon a defendant's motion constitutes an adjudication on the merits, *unless* specified otherwise by the court dismissing the action.[16] *See Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (noting that "it is well settled that the failure to

---

Court's dismissal of an action for lack of subject matter jurisdiction under Rule 12(b)(1) on Eleventh Amendment grounds without analysis of this specific issue); *Republic of Paraguay v. Allen,* 134 F.3d 622, 626 (4th Cir.) (same), *cert. denied, sub nom. Breard v. Greene,* 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998).

The Supreme Court has distinguished Eleventh Amendment immunity from Article III limitations on federal judicial power. *See Calderon v. Ashmus,* 523 U.S. at 745 n. 2, 118 S.Ct. at 1697 n. 2 (recognizing that the Eleventh Amendment is not co-extensive with the limitations on judicial power in Article III); *Wisconsin Dept. of Corrs. v. Schacht,* 524 U.S. 381, 388–89, 118 S.Ct. 2047, 2052–53, 141 L.Ed.2d 364 (1998) (noting that, unlike a question of subject matter jurisdiction under Article III, a court need not raise an Eleventh Amendment issue *sua sponte* ); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267, 117 S.Ct. 2028, 2033, 138 L.Ed.2d 438 (1997) (stating that the Eleventh Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction"). As the Court discussed in *Coeur d'Alene Tribe,* a State may waive its sovereign immunity from suit, and thus, the federal court may entertain the case or controversy involving the State, although a party is incapable of manufacturing subject matter jurisdiction under Article III if it is lacking. *See Coeur d'Alene Tribe,* 521 U.S. at 267, 117 S.Ct. at 2033–34. *See also Patsy v. Bd. of Regents,* 457 U.S. 496, 515–16 n. 19, 102 S.Ct. 2557 n. 19, 2567, 73 L.Ed.2d 172 n. 19 (1982).

16. The District Court did not specify that its dismissal of Norville's ADEA claim was not an adjudication on the merits within the meaning of Fed.R.Civ.P. 41(b). In fact, the federal court dismissed Norville's claim with prejudice, which constitutes a final judgment on the merits. *See Keith v. Aldridge,* 900 F.2d 736, 742 (4th Cir.1990) (concluding that an order of a district court dismissing a plaintiff's claims with prejudice constitutes a final judgment on the merits having res judicata effects); *Morgan v. Dept. of Offender Rehab.,* 166 Ga.App. 611, 305 S.E.2d 130, 133 (1983) (holding that a dismissal of an ADEA claim with prejudice constitutes an adjudication on the merits having res judicata effects).

Fed. R. Civ. Pro. 41(b) states as follows:

"For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction"); *Exch. Nat. Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130–31 (2d Cir.1976) (recognizing that "judgments under Rule 12(b)(6) are on the merits, and with res judicata effects").

We hold that Norville's present ADEA claim against the Anne Arundel County Board of Education is barred based on the res judicata effect of the judgment of the United States District Court for the District of Maryland.

*JUDGMENT OF THE COURT OF SPECIALS APPEALS IS VACATED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS THE APPEAL. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY NORVILLE.*

Chief Judge BELL joins in the judgment only.