**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

**No. 05-1337**

————————————

In Re:  DAVID V. BARSH, SR.,

                                                    Debtor.

---------------------------

DAVID V. BARSH, SR.,

                                        Plaintiff - Appellee,

         versus

STATE OF MARYLAND CENTRAL COLLECTION UNIT,

                                        Defendant - Appellant,

         and

BUD STEPHEN TAYMAN,

                                                    Trustee.

————————————

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Richard D. Bennett, District Judge.  (CA-
04-3997-1-RDB; BK-03-50819-JS; AP-03-5360-JS)

————————————

Argued:  May 22, 2006          Decided:  August 29, 2006

————————————

Before NIEMEYER, SHEDD, and DUNCAN, Circuit Judges.

————————————

Reversed by unpublished per curiam opinion.

————————————

**ARGUED:** Michael Scott Friedman, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellant. Joshua B. Carpenter, GEORGETOWN UNIVERSITY LAW CENTER, Appellate Litigation Program, Washington, D.C., for Appellee. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, Baltimore, Maryland, for Appellant. Steven H. Goldblatt, Director, David Arkush, Supervising Attorney, Daniel Staroselsky, GEORGETOWN UNIVERSITY LAW CENTER, Appellate Litigation Program, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

The State of Maryland Central Collection Unit ("CCU") appeals the judgment of the district court affirming an order of the bankruptcy court. The bankruptcy court held that CCU's judgment for attorney's fees and court costs against David Barsh was dischargeable in connection with Barsh's bankruptcy. We reverse because a prior state-court judgment precludes federal adjudication of the debt's dischargeability.

I.

In March 2002, CCU obtained a judgment from the District Court of Wicomico County, Maryland, for $7,795.77 against Barsh for unpaid fines levied for his failure to maintain insurance on his automobiles. In connection with that judgment, the state court awarded CCU $1,307.96 in attorney's fees and $54.00 in court costs. Barsh subsequently petitioned for bankruptcy in the United States Bankruptcy Court for the District of Maryland, an action that automatically stayed most collection action against him until the final resolution of his petition. See 11 U.S.C. § 362 (2000). Pursuant to 11 U.S.C. § 727 (2000), on May 26, 2003, the bankruptcy court granted Barsh a discharge of his debts, with the exception of those debts that were exempted from discharge under 11 U.S.C. § 523 (2000).

In August 2003, CCU requested, and the District Court of Wicomico County issued, a writ of garnishment to satisfy Barsh's debt for the fines, attorney's fees, and court costs. Under Maryland law, a judgment creditor may obtain a writ of garnishment by "filing in the same action in which the judgment was obtained a request" containing information about the underlying action, the debt, the judgment debtor, and the garnishee to whom the writ is directed. Md. Rule 2-646(b). When the request contains the proper information, "the clerk shall issue a writ of garnishment directed to the garnishee." Id. Both the garnishee and the judgment debtor may assert defenses to garnishment by filing objections with the issuing court. Md. Rule 2-646(e).

Barsh responded to the writ of garnishment by filing a number of pro se motions in the state court and in the federal bankruptcy court. On August 12, 2003, Barsh filed a "Suggestion of Bankruptcy" with the state court, claiming that his federal bankruptcy petition remained "open" and that a bankruptcy court order prevented CCU from collecting on the debt. (Appellee's Mot. to Supplement Ex. A.) On August 18, 2003, Barsh filed in state court a "Motion to Stop Wage Garnishment," in which he reiterated his claim that his bankruptcy petition had not yet been adjudicated and asked the court to stop the garnishment because CCU had not provided any documentation that the bankruptcy court's automatic stay had been lifted or that his debt had not been discharged.

4

(Appellee's Mot. to Supplement Ex. B.)  On August 22, 2003, Barsh filed in the bankruptcy court a "Motion for Determination of Dischargeability of Debt and Automatic Stay" and sent a copy of that motion to the state court.  (Appellee's Mot. to Supplement Ex. D.)  In that filing, he again claimed that his bankruptcy petition was still "open," that CCU had been "listed as a debt" in that petition, and that his debt to CCU had been discharged. (Appellee's Mot. to Supplement Ex. D.)  On September 5, 2003, Barsh filed in state court an "Emergency Response to Motion in Response to Removal of Stay," in which he again complained that his bankruptcy was still "open" and that CCU had not provided any documentation that the automatic stay had been lifted or that his debt had not been discharged in bankruptcy.  (Appellee's Mot. to Supplement Ex. E.) Barsh claimed that CCU had proceeded with garnishment simply "assuming that [his] debt with [CCU] was not discharged."  (Appellee's Mot. to Supplement Ex. E.)  He argued that CCU was incorrect to conclude that his debt was not discharged and again asked the state court to halt the garnishment of his wages.  Finally, on September 10, 2003, Barsh filed an adversary complaint in the bankruptcy court seeking a determination that his debt to CCU had been discharged in his bankruptcy.

The state court denied Barsh's Suggestion of Bankruptcy as moot on September 24, 2003, reasoning that his debt was not dischargeable because it qualified under § 523(a)(7) as a penalty

5

"payable to and for the benefit of a governmental unit."  The court

stated as follows:

> This Court determines that the Defendant, David Barsh, is
> not entitled to stay these proceedings and the resulting
> wage attachment by the Plaintiff because on the face of
> the U.S. Bankruptcy Code, 11 U.S.C. Section 523(a)(7),
> the debt is for a judgment for penalties due a
> governmental unit plus statutory collection fees
> therefor, which penalty does not appear to be a tax
> penalty excepted in Section 523(a)(7)(A) or (B).
>
> The court finds the Suggestion of Bankruptcy to be moot
> . . . .
>
> In the event the Defendant is successful in his adversary
> proceeding against the Plaintiff in the U.S. Bankruptcy
> Court, the Defendant should then file herein another
> Suggestion of Bankruptcy together with a certified copy
> of the Order signed by the U.S. Bankruptcy Court.

State of Md. Cent. Collection Unit v. Barsh, No. 0203-05814-2001,

slip op. at 2 (Md. Dist. Ct. Wicomico County Sept. 24, 2003).

On January 20, 2004, the bankruptcy court dismissed Barsh's

adversary complaint, finding that the debt was a penalty that was

not dischargeable under § 523(a)(7).  Barsh later filed a motion to

reconsider that dismissal.  On December 3, 2004, the bankruptcy

court modified its original order and entered partial summary

judgment in favor of Barsh, finding that the $1,307.96 in

attorney's fees and the $54.00 in court costs were dischargeable

because they were not penalties within the meaning of § 523(a)(7).

The bankruptcy court maintained its earlier ruling that the

$7,795.77 of motor vehicle fines were penalties under § 523(a)(7)

and thus not dischargeable.

6

CCU appealed to the U.S. district court, which affirmed the bankruptcy court's determination that the attorney's fees and court costs were dischargeable. CCU now brings this appeal. After oral argument, Barsh filed a motion under Fed. R. App. P. 10(e) and 4th Cir. R. 10(e) to supplement the record on appeal with copies of his state-court filings. We grant the motion to supplement and, for the following reasons, reverse the judgment of the district court.

## II.

We have jurisdiction to review the district court's decision in this matter pursuant to 28 U.S.C. § 1291 (2000). CCU argues that the bankruptcy court and the district court contravened the principles of preclusion by deciding the dischargeability of Barsh's debt after the state court had already refused to stay garnishment of Barsh's wages based on its consideration of that same issue. In the alternative, it argues that the debt for attorney's fees and court costs is not dischargeable because it is related to a nondischargeable debt. We first conclude that CCU has not waived its preclusion defense. We then address the merits of that defense and conclude that Barsh is precluded from litigating the dischargeability of his debt in this, his second, forum.

A.

Before the bankruptcy court and the district court, CCU maintained that, because the state court had already decided that Barsh's debt was not dischargeable, the Rooker-Feldman doctrine divested the lower federal courts of jurisdiction to readjudicate that issue. The Rooker-Feldman doctrine arose from two cases, Rooker v. Fid. Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983), in which the Supreme Court held that the lower federal courts lack jurisdiction to adjudicate claims for injuries arising from the decisions of state courts. See Rooker, 263 U.S. at 416 (holding that the federal district courts lack jurisdiction to declare a state-court judgment invalid, even if that judgment is patently wrong); Feldman, 460 U.S. at 482 (holding that the federal district courts lack jurisdiction to exercise appellate authority over state-court judgments). This circuit interpreted Rooker and Feldman to remove lower federal court jurisdiction to adjudicate any issue that required them to "sit[] in direct review of state court decisions" on issues that had been either "actually decided by a state court" or on issues that were "inextricably intertwined with a state court decision [such that] success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." Barefoot v. City of Wilmington, 306 F.3d 113, 120 (4th Cir. 2002) (internal quotation marks omitted), abrogation

8

recognized by <u>Davani v. Va. Dep't of Transp.</u>, 434 F.3d 712, 718-19 (4th Cir. 2006). Our interpretation of the Rooker-Feldman doctrine thus overlapped significantly with the doctrine of claim preclusion, which prohibits judicial reexamination of claims once they have been finally decided by a court of competent jurisdiction.

After the district court proceedings but before briefing in this appeal, however, the Supreme Court cabined its view of the Rooker-Feldman doctrine. The Court held that the Rooker-Feldman doctrine's jurisdictional limitation on the lower federal courts is

> confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. . . . [The Rooker-Feldman doctrine does not] stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

<u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284, 293 (2005) (internal quotation marks omitted).

CCU accordingly altered the nomenclature of its argument before this court. It argued below that, because the state court had decided the debt's dischargeability, the Rooker-Feldman doctrine removed federal jurisdiction to review that question again. CCU now claims that, because the state court decided the

9

debt's dischargeability, the principles of preclusion bar relitigation of that question in federal court. Unlike the Rooker-Feldman doctrine, the doctrines of preclusion are not jurisdictional in nature. See, e.g., Exxon, 544 U.S. at 293. Thus, with the exception of the jurisdictional element, CCU's substantive argument--that the federal courts may not decide this issue because the state court already has--remains unchanged.

Though we conclude that CCU raised the substance of its preclusion arguments below under the rubric of its arguments concerning the Rooker-Feldman doctrine, we also note that the courts of appeals have, out of concern for the finality of judgments and the preservation of scarce judicial resources, considered preclusion defenses for the first time on appeal. See 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4405 n.10 (2d ed. 2002) (citing Bechtold v. City of Rosemount, 104 F.3d 1062, 1068-69 (8th Cir. 1997) (raising preclusion defense sua sponte); United States v. Real Prop. Located in El Dorado City, 59 F.3d 974, 979 n.3 (9th Cir. 1995) (same); United Home Rentals, Inc. v. Tex. Real Estate Comm'n, 716 F.2d 324, 330-31 (5th Cir. 1983) (same)). We therefore conclude both that the Rooker-Feldman doctrine does not preclude our jurisdiction in this case and that CCU has not waived its preclusion argument.

B.

To determine the preclusive effect, if any, of the state court's decision to allow Barsh's wage garnishment to proceed, we apply the Maryland law of preclusion, giving the decision the same effect "as [it has] by law or usage in the [Maryland] courts." 28 U.S.C. § 1738 (2000); see also Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach, 420 F.3d 322, 327 (4th Cir. 2005).

Under Maryland law, the rules of claim preclusion, also called res judicata, are triggered when matters related to earlier litigation are raised in subsequent litigation. Claim preclusion applies when the subsequent litigation is based upon the same claim or cause of action as a claim or cause of action from the earlier litigation. It operates to bar later judicial consideration of all matters based upon that same claim, without regard to whether or to what extent those matters may have been raised in the earlier litigation.[1] See Colandrea v. Wilde Lake Cmty. Ass'n, 761 A.2d 899, 908 (Md. 2000). Claim preclusion is "based upon the judicial policy that the losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings." Id. at 909. In short, "[t]o avoid the vagaries of [claim preclusion] . . . a party

---

[1]By contrast, issue preclusion, also called collateral estoppel, applies when the subsequent litigation is based upon a claim or cause of action different from the one upon which the earlier litigation was based. It operates to bar reconsideration of only those issues "actually litigated in the previous action." See Colandrea v. Wilde Lake Cmty. Ass'n, 761 A.2d 899, 908 (Md. 2000).

11

must assert all the legal theories he wishes to in his initial action, because failure to do so does not deprive the ensuing judgment of its effect as res judicata." Id. at 910 (emphasis omitted).

For the doctrine of claim preclusion to bar the consideration of matters that were actually litigated or could have been litigated in the earlier proceedings, Maryland law requires that (1) the parties to the subsequent litigation be the same or in privity with the parties to the earlier litigation, (2) the subsequent litigation "present the same cause of action or claim" as the earlier litigation, and (3) "a court of competent jurisdiction" have rendered a "valid final judgment on the merits" in the earlier litigation. FWB Bank v. Richman, 731 A.2d 916, 927 (Md. 1999).[2]

_____

[2]Some recent decisions from the Maryland Court of Appeals do not mention the validity of the judgment as part of the third element of claim preclusion. See, e.g., Anne Arundel County Bd. of Educ. v. Norville, 887 A.2d 1029, 1037 (Md. 2005); Blades v. Woods, 659 A.2d 872, 873 (Md. 1995). Other decisions from that court include validity as a required element of the doctrine. See, e.g., FWB Bank, 731 A.2d at 927; Cassidy v. Bd. of Educ., 557 A.2d 227, 230 (Md. 1989). Further, the Maryland Court of Appeals' recent in-depth discussion of the doctrine described the elements of claim preclusion twice; one of those explanations included validity and one did not. Colandrea, 761 A.2d at 908 ("As we pointed out in deLeon v. Slear, [616 A.2d 380, 385 (Md. 1992)], the traditional principle of res judicata has three elements . . . (3) in the first suit, there must have been a valid final judgment on the merits by a court of competent jurisdiction." (emphasis omitted)); id. at 910 ("Under Maryland law, the requirements of res judicata or claim preclusion are: . . . 3) that there was a final judgment on the merits." (emphasis omitted)). We assume for the purposes of this appeal that Maryland's law of claim preclusion requires a valid

1.

The first element of the Maryland law of claim preclusion requires identity or privity of the parties to each proceeding. Id. at 927.  This element is clearly satisfied in this case.  The garnishment proceeding in state court was "a form of attachment and method of execution," Med. Mut. Liab. Ins. Soc. of Md. v. Davis, 883 A.2d 158, 161-62 (Md. 2005) (citations omitted), of CCU's money judgment against Barsh.  Once the writ was issued and Barsh's employer affirmed that it held wages belonging to Barsh, Barsh filed his motions objecting to the garnishment.  The proceedings to adjudicate those objections therefore involved both CCU and Barsh.

2.

The second element of the Maryland law of claim preclusion requires identity of the claims in each proceeding.  FWB Bank, 731 A.2d at 927.  To determine whether a claim in subsequent litigation is identical to the claim upon which earlier litigation was based, Maryland courts apply a "transactional" analysis in which they examine the facts supporting the claims underlying both actions; under this transactional approach, two claims based on the same transaction are the same claim.  Colandrea, 761 A.2d at 908. "'When a valid and final judgment rendered in an action

_____

judgment in the earlier litigation.  Because we conclude that the state court's decision was indeed valid, however, this assumption does not affect the outcome in this case.

13

extinguishes [a party's] claim . . . the claim extinguished includes all rights of [that party] to remedies against [the party to whom the claim is directed] with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'"[3]  Id. (quoting Restatement (Second) of Judgments § 24 (1982)).  To discern whether two sets of facts form part of the same transaction, Maryland courts take a "pragmatic approach," considering "'whether the facts are related in time, space, origin or motivation[;] whether they form a convenient trial unit[;] and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'"  Id. at 909 (quoting Restatement (Second) of Judgments § 24(2) (1982)).

We do not face here the difficulties usually attendant to determining whether the facts supporting two claims arise from the same transaction.  In the garnishment proceeding, Barsh asked the

---

[3]The Court of Appeals of Maryland has cautioned that its transactional approach to claim preclusion "'is justified only when the parties have ample procedural means for fully developing the entire transaction in the one action.'"  Kent County Bd. of Educ. v. Bilbrough, 525 A.2d 232, 238 (Md. 1987) (quoting Restatement (Second) of Judgments § 24 (1982)).  Once a court issues a writ of garnishment, Maryland's wage garnishment statute allows the debtor to "file a motion at any time asserting a defense or objection." Md. Rule 2-646(e).  Maryland's wage garnishment procedure therefore gave Barsh ample opportunity to raise the dischargeability of the debt when he protested the garnishment of his wages.  Furthermore, Barsh did, in fact, raise that issue in his filings with the Wicomico County District Court on August 18, 2003, and September 5, 2003.  We therefore conclude that the courts of Maryland would not decline to apply the transactional approach to determine whether the garnishment judgment precludes Barsh's claim in this case.

14

court to stop his wage garnishment in part because the debt to CCU had been discharged in his bankruptcy. In this action, Barsh asks the federal courts to declare the debt as discharged and to enjoin any further collection action. Both actions requested judicial determinations that the characteristics of the debt do not render it a nondischargeable "penalty" under § 523(a)(7). Each action thus relies not only on facts that are part of the same transaction, but on a perfectly identical set of facts. The identical origin and nature of the facts giving rise to each action therefore require us to conclude that the two actions are based on the same transaction. Furthermore, the legal theories and requests for relief based on that transaction are identical in both proceedings. Barsh asked both the state and the federal courts to declare his debt as discharged and to take action to prohibit collection action upon it. We are, therefore, hard-pressed to contemplate two more identical claims.

3.

The third element of the Maryland law of claim preclusion requires that the precluding court have entered a valid, final judgment on the merits. FWB Bank, 731 A.2d at 927. We first consider whether the state court's judgment was final, then whether it was valid, and, finally, whether it was on the merits.

15

Under Maryland law, a judgment is final if it "determine[s] and conclude[s] the rights of the parties involved or den[ies] a party the means to prosecute or defend his or her rights and interests in the subject matter of the proceeding." In re Billy W., 874 A.2d 423, 431 (Md. 2005) (internal quotation marks omitted). The state court here decided the issue before it-- whether Barsh's debt was discharged in his bankruptcy--and, based upon that decision, denied Barsh his asserted right to avoid garnishment to collect the debt. Though the state court did not address how the § 523(a)(7) analysis might produce a different result for the debt for attorney's fees and court costs, as distinct from the debt for the fine, both debts were clearly part of the garnishment that Barsh had challenged and thus part of the state court's ruling that garnishment could continue. Once the state court entered the order denying Barsh's motion to stay the garnishment, Barsh had no further means to defend his rights in that proceeding. If Barsh believed that the state court did not adequately or correctly address the theories upon which relief was sought or explain why it had rejected those theories, the appropriate avenue was appeal, not raising the same issues in a collateral action in federal court.

Maryland law recognizes the final nature of judgments entered in garnishment proceedings. For example, the statute outlining the procedure that garnishees must follow when they hold property in

16

accounts in the name of two or more persons, at least one of whom is not a judgment debtor, directs garnishees to hold property until the court issues a release or a "final judgment in the garnishment proceeding." Md. Code. Ann., Cts. & Jud. Proc. § 11-603(c)(2) (West, Westlaw through 2006 Reg. Sess. & 2006 First Spec. Sess.). Furthermore, though Maryland law generally does not allow appeal of nonfinal orders, Md. Code. Ann., Cts. & Jud. Proc. § 12-301 (West, Westlaw through 2006 Reg. Sess. & 2006 First Spec. Sess.), the Maryland Court of Appeals took jurisdiction of an appeal, without any comment concerning an interlocutory posture, after the lower court had entered judgment allowing a garnishment to proceed over the garnishee's objections. See Grey v. Allstate Ins. Co., 769 A.2d 891, 894 (Md. 2001). We therefore conclude that the state court judgment in the garnishment proceeding had no special characteristic under Maryland law that would render it interlocutory and thus unlike other final judgments that conclusively determine the rights of the parties.

The state court's judgment was also valid. Maryland law authorizes courts of that state to enter orders of garnishment to satisfy judgments entered in those courts. Md. Rule 2-646(b). The judgment debtor may file objections to the garnishment. Md. Rule 2-646(e). As part of his effort to halt the garnishment of his wages, Barsh raised the issue of the debt's dischargeability. In order to determine that the garnishment could proceed, the state

17

court decided that Barsh's debt was not dischargeable in bankruptcy because it was a penalty for the benefit of a governmental unit. Federal bankruptcy law does not prohibit state-court adjudication of issues related to bankruptcy cases. See 28 U.S.C. § 1334(b) (2000) (granting the federal district courts "original but not exclusive jurisdiction" of actions arising under federal bankruptcy laws); see also In re Toussaint, 259 B.R. 96, 101 (E.D.N.C. 2000) ("If the defendant chooses to plead the bankruptcy discharge as an affirmative defense, not removing the action to bankruptcy court, then jurisdiction over the matter rests with the state court and does not attach to the federal court. A state court acquires jurisdiction over the issue of dischargeability when the debtor raises the bankruptcy discharge defense." (citation omitted) (internal quotation marks omitted)). We therefore conclude that the state court's judgment validly decided that Barsh's debt had not been discharged in his bankruptcy.

Finally, the state court's judgment was on the merits. The state court concluded that Barsh's Suggestion of Bankruptcy was moot, apparently because the bankruptcy court's automatic stay had already been lifted. It also concluded, however, that Barsh's debt was not dischargeable, and therefore remained a collectable debt, because it was a penalty within the meaning of § 523(a)(7). That the state court denied one of Barsh's defenses to garnishment as

18

moot has no bearing on the court's conclusions concerning the other defense.

In conclusion, Barsh's claim that his debt had been discharged in bankruptcy was litigated in the state court. By litigating the claim there, Barsh is precluded from doing so again in this forum.

### III.

For the foregoing reasons, we conclude that the Wicomico County District Court's decision to allow the garnishment of Barsh's wages to proceed precludes further consideration of the debt's dischargeability in this court and remand to the district court for further proceedings consistent with this opinion. On remand, the Wicomico County District Court's conclusion that the debt is not dischargeable should be treated as res judicata. The judgment of the district court is

REVERSED.