In re Darrell Ryan MEADOWS,
Debtor.

Darrell Ryan Meadows, Plaintiff,

v.

Carter Hagler, d/b/a Hagler Personal
Properties, Defendant.

Bankruptcy No. 05–50086–PWB.
Adversary No. 07–04033.

United States Bankruptcy Court,
N.D. Georgia,
Rome Division.

April 8, 2010.

---

Robert S. Toomey, Law Office of Robert S. Toomey, PC, Cartersville, GA, for Debtor, Darrell Ryan Meadows.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

PAUL W. BONAPFEL, Bankruptcy Judge.

This adversary proceeding concerns the effect under 11 U.S.C. § 524(a) of a chapter 7 debtor's discharge on a landlord's claim for rent due on a prepetition lease of real property and on a judgment for rent the landlord obtained.

For reasons set out below, the Court concludes that the landlord sought and obtained judgment on the basis of a prepetition claim against the debtor that was

discharged in his bankruptcy case, that his doing so violated the discharge injunction of 11 U.S.C. § 524(a)(2), and that the judgment is void under 11 U.S.C. § 524(a)(1). Further, the Court concludes that the neither the *Rooker–Feldman* doctrine nor the full faith and credit statute, 28 U.S.C. § 1738, precludes granting relief to the debtor. The Court declines, however, to award any sanctions against the Landlord.

This Order constitutes the Court's findings of fact and conclusions of law pursuant to FED.R.CIV.P. 52(a), *applicable under* FED. R. BANKR.P. 7052.[1]

## I. Facts

Darrell Meadows, the plaintiff in this action (the "Debtor"), and his wife, Candice, entered into a lease dated July 1, 2004, for residential property with the defendant, Carter B. Hagler (the "Landlord").[2] The lease was for a term of 24 months, ending on June 30, 2006, with rent of $985 per month, due in advance, and a $25 late charge if rent was not paid in full by the fifth day of each month. The Landlord held a $500 security deposit.

The Debtor and his wife had been leasing the property since March 2003 under a lease that had expired.[3] As of the date of the new lease on July 1, 2004, the Debtor and his wife owed $985 in rent, and the Landlord held a $500 security deposit. Both items were carried over in the accounting with regard to the new lease.[4]

On March 17, 2005, the Debtor filed a chapter 7 petition in this Court. He listed the lease as an unexpired lease on Schedule G and the security deposit as an asset on Schedule B. He also listed the Landlord on the list of creditors he filed in the case, and the Landlord's name and address thus appears on the list of creditors who received notice of the case.[5] The Debtor did not, however, list any debt as owing to the Landlord on his schedules. The Landlord knew about the bankruptcy filing around the time it was filed.[6]

According to the Landlord's records,[7] the amount due on the lease at the time of the filing of the bankruptcy petition was $3,470, representing rent and late fees due for a portion of December 2004, and all of

---

1. This Court has authority to hear and determine this proceeding under 28 U.S.C. § 157(b)(1) as a core proceeding arising under Title 11 of the United States Code within the District Court's jurisdiction under 28 U.S.C. § 1334(b) that the District Court has referred under 28 U.S.C. § 157(a) and L.R. 83.7, N.D.Ga. Even if this is not a core proceeding, the Court may hear and determine this proceeding under 28 U.S.C. § 157(c)(2) based on the consent of the parties. See Defendant's Answer, admitting jurisdictional allegation of complaint.

 Both parties filed motions for summary judgment, and the Court held a hearing on the motions on November 18, 2009. At the hearing, the parties agreed to the Court's determination of any factual issues based on the record before the Court in lieu of a trial. The motions for summary judgment are, therefore, moot.

2. Defendant's Response to Plaintiff's Motion for Summary Judgment, and Defendant's Counter–Motion for Summary Judgment, filed March 6, 2009 (hereinafter "Defendant's Motion"), Exhibit 2 [Docket No. 15 at 19].

3. Defendant's Motion, Exhibit 1 (Affidavit of Mr. Hagler) [Docket No. 15 at 14, 15], ¶ 3.

4. Defendant's Motion, Exhibit 1 (Affidavit of Mr. Hagler) [Docket No. 15 at 14, 15], ¶¶ 3, 4; Exhibit 3 [Docket No. 15, at 29, 30].

5. Certificate of Service of Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, and Deadlines, dated March 19, 2005. [Docket No. 4].

6. Defendant's Motion, Exhibit 1 (Affidavit of Mr. Hagler) [Docket No. 15 at 14, 16], ¶ 5.

7. Defendant's Motion, Exhibit 3 [Docket No. 15, at 28, 30].

the rent for January through March 2005, about three and a half months.

Because assumption of the lease did not occur in the case, it was automatically deemed rejected under 11 U.S.C. § 365(d)(1). The Debtor did not reaffirm any obligation to the Landlord under 11 U.S.C. § 524(c). The Debtor received a discharge on June 30, 2005.

The Landlord asserts that the Debtor and his wife contacted him before the Debtor filed his bankruptcy case to inform him of the upcoming filing and to assure him that they intended to stay in the premises and would continue to pay rent.[8] The Landlord further asserts that the Debtor never indicated that they intended to surrender the property or to discharge any rent obligation to him. The Landlord reviewed the Debtor's petition and schedules, noting that he did not list any amount due to him as a debt and did not list the lease in his statement of intention. The Landlord concluded that the Debtor's statements in his petition and schedules coincided with his earlier statements regarding his treatment in the bankruptcy case, so he saw no need to seek legal counsel.[9]

After the filing of the bankruptcy case, the Landlord continued to receive payments of rent. During the 15 months after the filing of the Debtor's case (April 2005—June 2006) until the lease expired, the Landlord received payments totaling $14,550.[10] The Landlord's accounting shows charges for this period of $15,000. Although the rent for 15 months at $985 per month is only $14,775, the Landlord also charged a late fee of $15 for each of the months ($10 less than the lease permitted). The late fee arose because the Landlord applied the payments he received to the oldest amounts due, so all of the payments following the Debtor's bankruptcy case were not timely under the terms of the lease.

It appears that, of the 15 payments made during the period, five were made by checks with the Debtor's name that the wife signed[11] and two in cash that the Debtor delivered.[12] During all this time, the Landlord points out, the Debtor continued to live in the premises and never indicated that he intended to discharge any obligation.[13]

At the end of the lease term, therefore, the Landlord's accounting shows $3,920 due, which is consistent with the initial, pre-bankruptcy amount due of $3,470 plus $450, the amount by which post-bankruptcy charges exceeded post-bankruptcy receipts. In the last month of the lease term, the Landlord and the Debtor met for an accounting of rent payments. The Debtor agreed that he owed rent for four months (February—June 2006), paid rent for February 2006, and agreed to pay the remaining amount due in one payment, all without indicating that the obligation had been discharged in bankruptcy.[14]

8. Defendant's Motion, Exhibit 1 (Affidavit of Mr. Hagler ¶ 5, 6) [Docket No. 15 at 14, 16].

9. Defendant's Motion, Exhibit 1 (Affidavit of Mr. Hagler ¶ 5, 7) [Docket No. 15 at 14, 16].

10. The payments were irregular, consisting of one payment of $300, three of $750 each, nine of $1,000 each, and two of $1,500 each.

11. Defendant's Motion, Exhibit 4 [Docket 15 at 32]

12. Defendant's Motion, Exhibit 5 [Docket 15 at 37].

13. Hagler Affidavit ¶ 8, 9 [Docket No. 15 at 16].

14. Hagler Affidavit ¶¶ 10–11 [Docket No. 15 at 17].

After unsuccessful attempts to contact the Debtor after he and his wife moved out of the premises at the expiration of the lease term, the Landlord succeeded in reaching the Debtor's wife in November. The Debtor's wife told the Landlord that in her view the Debtor's bankruptcy filing had discharged the obligation. The Landlord asserts this was the first time he had heard this contention.[15] After the Landlord received no response to his demand letter offering to accept payment of rent without late fees of $600 and charges of $307 for cleaning and repair of a window,[16] the Landlord filed a complaint in December 2006 in the Magistrate Court of Bartow County against the Debtor and his wife.

The complaint asserted a claim for rent of $985 for each of March through June in the amount of $3,940 plus $407 representing the amount due for late fees after credit for the security deposit remaining after deductions for damages and cleaning,[17] for a total of $4,347, plus court costs of $69.[18] The Debtor's wife filed an answer on behalf of both of them, which attached copies of the Debtor's discharge in his case and of a cover sheet indicating the filing of her bankruptcy case.[19]

The matter came on for trial, at which only the Landlord appeared.[20] After a trial, the Magistrate Court entered judgment in favor of the Landlord and against both the Debtor and his wife in the principal amount of $4,347, plus interest and costs of $69.[21] The Magistrate Court noted that the Debtor and his wife had filed the bankruptcy information just mentioned, but concluded that it did not preclude prosecution of the claim or entry of judgment. The Magistrate Court stated: [22]

> No other information was available with regard to Candice Meadows' bankruptcy filing, but Plaintiff introduced into evidence a complete copy of Darrell Meadows' bankruptcy petition. The indebtedness sued upon by Plaintiff is not scheduled in Mr. Meadows' petition, and there is no evidence that such debt was scheduled in Mrs. Meadows' petition. Bankruptcy being an affirmative defense, the Court finds that the Defen-

15. Hagler Affidavit ¶ 13 [Docket No. 15 at 17].

16. Hagler Affidavit ¶ 14 [Docket No. 15 at 17]; Exhibit 6 [Docket No. 15 at 39, 40].

17. Although not explained in the complaint, the basis for the $407 charge is explained in the letter: $600 for late fees plus $307 for cleaning and repair of a window, a total of $907, less the $500 security deposit.

18. The complaint also asserts a "claim amount" of $4,372, which represents the amount due plus a process server charge of $25.

19. Exhibit 9 [Docket No. 15 at 46] purports to be a copy of the response, but it is incomplete. The copy in the record has an Exhibit "A,", which is a copy of the Debtor's discharge, but not an Exhibit "B." The judgment entered in the case [Exhibit 10 [Docket No. 15 at 50]] states that Exhibit "B" to the response is "a one-page cover sheet indicating that Candice A. Meadows filed a Chapter 7 Bankruptcy Case, Case No. 06–41832, in the United States Bankruptcy Court for the Northern District of Georgia on September 28, 2006." The records of this Court confirm such a filing and the entry of a discharge on February 12, 2007. Case No. 06–41832, Docket Nos. 1 and 28.

20. Exhibit 10 [Docket No. 15 at 51].

21. Exhibit 10 [Docket No. 15 at 51]. The judgment is dated December 24, 2007, but it appears that it was actually entered in 2006. Hagler Affidavit ¶ 17 [Docket No. 15 at 15, 18]. The parties agree that the Landlord obtained the judgment prior to the filing of the complaint in this proceeding in April 2007. See Complaint ¶ 14 [Docket 1] and Answer ¶ 14 [Docket 4].

22. Exhibit 10 [Docket No. 15 at 51].

dants have not met their burden of proving that the instant action is barred by any Bankruptcy Stay or Discharge.

After entry of judgment, and apparently in response to a wage garnishment action, the Debtor filed this adversary proceeding asserting a willful violation of the discharge injunction and seeking actual and punitive damages.

## II. Claims and Defenses of the Parties

The Debtor contends that the Landlord's actions were to collect a prepetition debt that was discharged in his bankruptcy case and that, therefore, the Landlord violated the discharge injunction of 11 U.S.C. § 524(a)(2) and the judgment is void under 11 U.S.C. § 524(a)(1). The Debtor seeks a determination that the judgment is void and an award of actual and punitive damages.

The Landlord asserts that he sued on a post-petition obligation of the Debtor, i.e., rent he owed for March through June 2006 and, therefore, the discharge injunction does not apply. The postpetition obligation, he asserts, arises from a tenancy at will that arose following the Debtor's bankruptcy case based on his continued occupancy of the premises after the filing

of his bankruptcy case, his post-petition payment of rent, and his representations to the Landlord that he was obligated to pay the rent.

The Landlord correctly points out that, under Georgia law, an obligation to pay rent is generally implied when a party occupies real property owned by another, O.C.G.A. § 44-7-5, and that a tenancy at will arises when a tenant orally agrees to pay rent on premises he occupies, O.C.G.A. § 44-7-6. *See, e.g., Diner One, Inc. v. Bank South N.A.,* 219 Ga.App. 702, 466 S.E.2d 234 (1995); *Erfani v. Bishop,* 251 Ga.App. 20, 22, 553 S.E.2d 326 (2001).

An alternative defense to the Debtor's complaint is that the Magistrate Court judgment determined that the Debtor's discharge did not bar the action for rent [23] and that the Debtor cannot challenge that determination in this Court under the doctrine of claim preclusion (traditionally referred to as res judicata [24]). This argument implicates the *Rooker–Feldman* doctrine, which holds that a federal District Court lacks subject-matter jurisdiction to entertain a challenge, on federal grounds, to a judgment of a state court, [25] and the

---

**23.** The Landlord asserts in his brief [Docket No. 15 at 7, 11] that the Magistrate Court entered judgment [Exhibit 10 [Docket No. 15 at 51]] based on a tenancy at will and that this determination is binding. As later text discusses, however, the Magistrate Court could not have entered judgment based on a tenancy at will because the Landlord did not sue on such a claim. The ruling of the Magistrate Court that is a proper basis for the Landlord's claim preclusion defense is its conclusion that the Debtor had the burden of establishing the application of his bankruptcy discharge as an affirmative defense and that he had failed to do so because the schedules did not list a debt to the Landlord.

**24.** The Supreme Court has expressed a preference for use of modern terminology in the analysis of claim preclusion, traditionally re-

ferred to as res judicata, and issue preclusion, traditionally referred to as collateral estoppel. *New Hampshire v. Maine,* 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). *See generally* Klein, Ponoroff, and Borrey, *Principles of Preclusion and Estoppel in Bankruptcy Cases,* 79 AM. BANKR L.J. 839 (2005).

**25.** The *Rooker–Feldman* doctrine derives its name from two cases decided by the Supreme Court, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The rule arises from the principle that subject-matter jurisdiction of the federal courts to review a state court judgment is vested exclusively in the Supreme Court under 28 U.S.C. § 1257. *See Exxon*

full faith and credit statute, 28 U.S.C. § 1738, which requires federal courts to give "full faith and credit" to the judgments of state courts.

## III. Discussion

### A. Prepetition Nature of Landlord's Claim

The Court begins with consideration of the Landlord's position that he did not violate the discharge injunction of § 524(a)(2) and that the judgment is not void under § 524(a)(1) because he sought to enforce, and obtained a judgment on, obligations of the Debtor that arose after the filing of his petition to which these provisions do not apply. The argument properly describes the operation of § 524(a), but the premise that he was seeking to collect a postpetition debt fails for three reasons.

■ First, the Landlord sued to enforce the Debtor's liability under the prepetition lease, not his obligations to pay rent as a tenant at will. The nature of the Landlord's claim as a claim to collect under the lease is clear from the fact that he sought to collect late fees, which could not be a term of a tenancy at will arising in the absence of a written agreement. A debtor's obligations for rent under a lease arise when the lease is signed, and all of the obligations, whether or not matured, constitute a debt within the meaning of 11 U.S.C. §§ 102(12). E.g., *Midwest Holding # 7, LLC v. Anderson (In re Tanner Family, LLC)*, 556 F.3d 1194 (11th Cir.2009).

■ The second flaw in the Landlord's premise that he was enforcing a postpetition obligation arising under a tenancy at will is that he has not demonstrat-

ed the existence of a tenancy at will. The reason is that the property remained subject to an express lease. When the trustee in the Debtor's bankruptcy case failed to assume the lease within 60 days of the filing of the case, it was rejected by operation of law. 11 U.S.C. § 365(d)(1). The consequence of rejection is not termination of the lease, however. Rather, the rejection of a lease constitutes a breach of the lease. 11 U.S.C. § 365(g).

■ The Court assumes that the Landlord had the right to terminate the lease due to the *Debtor's* breach, but he chose not to do so. Instead, he continued to recognize the lease as remaining in effect with regard to the co-tenant, the Debtor's wife, who remained obligated to pay in accordance with its terms notwithstanding the Debtor's bankruptcy filing and discharge of his obligations. 11 U.S.C. § 524(e). The Landlord did so by, among other things, applying payments of rent to the oldest amounts due and charging late fees because, by applying the payments in that manner, rent was never paid on a current basis. Because the property was subject to a written lease agreement, a tenancy at will with the Debtor for the same property could not possibly exist.

Finally, even if a tenancy at will had existed between the Debtor and the Landlord, the Landlord has failed to establish that the amount of rent he sought to collect was not paid. At $985 per month, the rent for the 15 months that the Debtor and his wife occupied the property after the filing of the Debtor's bankruptcy case (when the tenancy at will would have begun) totaled $14,775. During this period, the Debtor and his wife paid $14,550. The Debtor can properly be held liable for more than $225 under this theory only by

*Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 283–89, 125 S.Ct. 1517, 161

L.Ed.2d 454 (2005).

recognizing the validity of the application of postpetition rent payments to rent due for periods prior to the filing of the petition. Because the Debtor's wife did not file bankruptcy prior to expiration of the written lease, the Debtor's bankruptcy case did not preclude the application of rent insofar as the wife's liabilities to the Landlord are concerned. But if the Landlord relies on the Debtor's occupancy and payment of rent to establish the existence of the Debtor's obligations under a tenancy at will for the period of his occupancy, he cannot apply payments to the discharged debt without violating the discharge injunction.

█ A debtor can, to be sure, make voluntary payments, 11 U.S.C. § 524(f), but the evidence here does not establish that the Debtor's payments that the Landlord applied to prepetition rent (necessary, as shown above, for the rent sued on to be a postpetition obligation) qualify as voluntary payments of prepetition rent under this statute. To the contrary, the facts indicate that the Landlord continued to seek to enforce all of the terms of the lease and applied rent in accordance with its terms. The Landlord's reliance on the Debtor's agreement to pay all the rent due, including the prepetition rent, is unavailing in the absence of a reaffirmation of the Debtor's obligations under the lease in accordance with 11 U.S.C. § 524(c).

It is clear, then, that the Landlord sought to enforce the terms of an obligation that the Debtor incurred prior to the filing of the petition.

## B. Dischargeability of Debt Based on Prepetition Lease

The Debtor's liability under the lease arose prior to the filing of his case and, as

such, those obligations were discharged in his bankruptcy case under 11 U.S.C. § 727(b),[26] unless some exception to discharge exists.

█ Section 727(b) discharges a debtor "from all debts that arose before the date of the order for relief," which is the date of the filing of the petition in a voluntary case, 11 U.S.C. § 301(b), unless the debt is excepted from discharge under 11 U.S.C. § 523. The only provision of § 523 possibly applicable here is § 523(a)(3), which provides an exception to discharge for a debt if it is not listed or scheduled. But this exception by its express terms does not apply here for two reasons.

First, a debt is excepted only if it is "neither listed nor scheduled." § 523(a)(3). The Debtor *listed* the Landlord on the list of creditors he filed in the case, even though he did not *schedule* the Landlord as an unsecured creditor. Because the Debtor listed the Landlord, the § 523(a)(3) exception is plainly inapplicable.

Second, the § 523(a)(3) exception does not apply if the creditor had timely notice of the filing of the bankruptcy case in time to file a proof of claim and, if the debt is excepted from discharge under § 523(a)(2), (4), or (6), in time to file a timely request for determination that the debt is excepted under one of those sections as § 523(c) requires, in the absence of fraud or intentional design.[27] No assertion of fraud or intentional design has been made in this matter beyond the fact that the Debtor wanted to continue to live in the premises and continue to pay rent which, of course, he did.

Because the Debtor listed the Landlord in his list of creditors and because the

---

26. *See, e.g., Miller v. Chateau Communities, Inc. (In re Miller),* 282 F.3d 874 (6th Cir. 2002).

27. *E.g., Samuel v. Baitcher (In re Baitcher),* 781 F.2d 1529 (11th Cir.1986).

Landlord knew of the bankruptcy case shortly after its filing, the Debtor's debt to the Landlord was indisputably discharged notwithstanding his failure to schedule the Landlord as a creditor.

## C. Effect of Debtor's Failure to Assert Bankruptcy as Affirmative Defense

 The Magistrate Court ruled that discharge in bankruptcy is an affirmative defense and that the Debtor had not met his burden of proving that any discharge barred the Landlord's action. The ruling of the Court of Appeals of Georgia in *Countrywide Home Loans, Inc., v. King*, 296 Ga.App. 221, 674 S.E.2d 78 (2009) supports this ruling. But as the Court of Appeals itself may have recognized,[28] this conclusion is wrong. The derivation of § 524(a) and the legislative histories accompanying its enactment by the Bankruptcy Reform Act of 1978 and the enact-

ment of its predecessor statute, § 14f of the Bankruptcy Act, by an amendment to the Bankruptcy Act, clearly establish that § 524(a) and its predecessor abrogated the pre–1970 rule that a debtor must affirmatively plead a bankruptcy discharge.[29]

Prior to amendment of the Bankruptcy Act in 1970, a bankruptcy discharge was an affirmative defense that a debtor had to assert in response to a post-discharge action by a creditor.[30] Thus, a creditor could prosecute a collection action against a debtor and obtain a judgment unless the debtor answered the complaint and asserted the bankruptcy discharge as a defense.

In 1970, Congress added § 14f to the Bankruptcy Act,[31] which declared state court judgments to be "null and void" to the extent they determined the personal liability of the debtor. The legislative history to this provision makes its purpose quite clear:[32]

---

**28.** An Editor's Note to the opinion published by Thomson/West states, "After publication of this opinion, the Court of Appeals determined that it had been wrongly decided. Therefore, this opinion has no precedential value and should not be cited as authority." 674 S.E.2d at 78.

**29.** An excellent discussion of the derivation of § 524(a) and the legislative histories to which the text refers is found in *Lone Star Security Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158 (9th Cir. BAP 2005).

**30.** *Dimock v. Revere Copper Co.*, 117 U.S. 559, 6 S.Ct. 855, 29 L.Ed. 994 (1886) held that a bankruptcy discharge under the Bankruptcy Act of 1867 was an affirmative defense that the bankrupt must plead. The holding found its way into Fed.R.Civ.P. 8(c) upon promulgation in 1937.

**31.** Bankruptcy Act § 14f, formerly codified at 11 U.S.C. § 362(f) (repealed 1979), provided:
 f. An order of discharge shall—
 (1) declare that any judgment theretofore or thereafter obtained in any other court is null and void as a determination of the personal liability of the bankrupt with respect to any of the following: (a) debts not

excepted from the discharge under subdivision a of section 17 of this Act; (b) debts discharged under paragraph (2) of subdivision (c) of section 17 of this Act; (c) debts determined to be discharged under paragraph (3) of subdivision (c) of section 17 of this Act.
 (2) enjoin all creditors whose debts are discharged from thereafter instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt.
Section 17a defined debts excepted from discharge and is the predecessor of current 11 U.S.C. § 523(a). Section 17c(2) provided that certain debts excepted from discharge under § 17(a)(2), (4), or (8) (generally, the predecessors to current 11 U.S.C. § 523(a)(2), (4), and (6)) would be discharged unless the creditor filed a timely application for the bankruptcy court to determine the dischargeability of the debt. Section 17c(3) provided for the bankruptcy court to determine the dischargeability of such a debt. Sections 17c(2) and (3) are the predecessors to 11 U.S.C. § 523(c).

**32.** H.R.Rep. No. 91–1502 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4156. *See also* 116 Cong. Rec. 34,818 (Statement of Rep. Wig-

[T]he major purpose of the proposed legislation is to effectuate, more fully, the discharge in bankruptcy by rendering it less subject to abuse by harassing creditors. Under present law creditors are permitted to bring suit in State courts after a discharge in bankruptcy has been granted and many do so in the hope the debtor will not appear in that action, relying to his detriment upon the discharge. Often the debtor in fact does not appear because of such misplaced reliance, or an inability to retain an attorney due to lack of funds, or because he was not properly served. As a result a default judgment is taken against him and his wages or property may again be subjected to garnishment or levy. All this results because the discharge is an affirmative defense which, if not pleaded, is waived.

[The proposed legislation] is meant to correct this abuse.

In 1978, Congress passed the Bankruptcy Reform Act of 1978 that enacted the Bankruptcy Code as a comprehensive revision of the bankruptcy laws. Section 524(a) of the Bankruptcy Code deals with the subject matter of former § 14f.

Section 524(a)(2) provides that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any [discharged] debt as a personal liability of the debtor, *whether or not discharge of such debt is waived.*" 11 U.S.C. § 524(a)(2) (emphasis added). Section 524(a)(1) provides that a discharge "voids any judgment *at any time obtained* to the extent that such judgment is a determination of the personal liability of the debtor with respect to any to the [discharged debt], *whether or not discharge of such debt is waived.*" 11 U.S.C. § 514(a)(2) (emphasis added).

Section 524(a) thus retained and elaborated on the provisions of § 14f of the Bankruptcy Act. Section 524(a) changed the injunction from an injunction in the discharge order to a statutory injunction that applied to all entities and added language that the injunction applies "whether or not discharge of such debt is waived."

Again, the legislative history clearly states the purpose of the provisions of § 524(a): [33] Subsection (a) specifies that a discharge in a bankruptcy case voids any judgment to the extent that it is a determination of the personal liability of the debtor with respect to a prepetition debt, and operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, including telephone calls, letters, and personal contacts, to collect, recover, or offset any discharged debt as a personal liability of the debtor, or from property of the debtor, whether

---

gins) (as quoted in *Lone Star Security Video, Inc. v. Gurrola* (*In re Gurrola*), 328 B.R. 158, 168 n. 9 (9th Cir. BAP 2005)):

> Many bankrupts do not realize the consequences of ignoring the State court proceeding. Others who do have great difficulty obtaining counsel because, having just gone through bankruptcy, they have no resources with which to pay an attorney's fee.... In yet other cases the service of process on the bankrupt is inadequate and he is never in fact notified of the State court suit against him, and thus he defaults.

> In all of these instances the concept of a discharge in bankruptcy by which the Bankruptcy Act attempts to assure the honest but unfortunate person a fresh start and rehabilitation is defeated.

**33.** H.R.Rep. No. 95–595, at 365–66 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6321–22 (emphasis added). The Senate Report is identical. S.Rep. No. 95–989, at 80 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5866.

or not the debtor has waived discharge of the debt involved. *The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts.* This paragraph has been expanded over a comparable provision in Bankruptcy Act § 14f to cover any act to collect, such as dunning by telephone or letter, or indirectly through friends, relatives, or employers, harassment, threats of repossession, and the like. The change is consonant with the new policy forbidding binding reaffirmation agreements under proposed 11 U.S.C. § 524(d), and *is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it.* In effect,

the discharge extinguishes the debt, and creditors may not attempt to avoid that. *The language "whether or not discharge of such debt is waived" is intended to prevent waiver of discharge of a particular debt from defeating the purposes of this section.* It is directed at waiver of discharge of a particular debt, not waiver of discharge in toto as permitted under section 727(a)(9).

The statutory language of § 524(a), as well as its derivation and legislative history discussed above, make it clear that the bankruptcy discharge is not an affirmative defense.[34]

 A similar theory is that the Debtor's failure to assert his discharge amounted to a waiver of its protections or that his conduct estopped him from now asserting

**34.** *See, e.g., Hamilton v. Hamilton (In re Hamilton),* 540 F.3d 367, 373 (6th Cir.2008); *Lone Star Security & Video, Inc. v. Gurrola (In re Gurrola),* 328 B.R. 158 (9th Cir. BAP 2005); *Braun v. Champion Credit Union (In re Braun),* 141 B.R. 133, 138 (Bankr.N.D.Ohio 1992); 4 COLLIER ON BANKRUPTCY ¶ 524.LH [1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). *But see Federal Deposit Ins. Corp. v. Gulf Life Ins. Co.,* 737 F.2d 1513, 1519 (11th Cir.1984), *rehearing denied,* 749 F.2d 733 (11th Cir.1984) (Table); *Gagan v. American Cablevision, Inc. (In re Gagan),* 77 F.3d 951, 967–68 (7th Cir.1996).

In *Federal Deposit Insurance Corp. v. Gulf Life Ins. Co.,* 737 F.2d 1513, 1519 (11th Cir.1984), *rehearing denied,* 749 F.2d 733 (11th Cir.1984) (Table), a third party defendant included in her answer an allegation that she was in a Chapter XII proceeding. On appeal from the judgment rendered against her, she contended that the trial court erroneously rejected what she and the Court of Appeals characterized as her "affirmative defense" by not requiring the third party plaintiff to prove that its debt fell within an exception to her discharge. The Court of Appeals affirmed, noting that the evidence did not include an order of discharge or other proof of discharge. Thus, the court ruled that the burden never fell on the third party plaintiff to show an exception to the discharge. 737 F.2d at 1513.

Although *Gulf Life Insurance* arguably stands for the proposition that the bankruptcy discharge is an affirmative defense, the court did not address that issue beyond reciting the contention that the third party defendant made. Moreover, the discharge at issue was a Chapter XII discharge which, under the former Bankruptcy Act, occurred upon confirmation of an arrangement under Bankruptcy Act § 476. Thus, the assertion that a Chapter XII case was pending did not mean that a discharge had been granted. (A stay may have prevented continuation of the litigation, but that is a different issue with which the Eleventh Circuit did not deal.) Further, Bankruptcy Act § 14f, the predecessor of § 524(a) at issue here, referred to an "order of discharge." Thus, it is not clear whether § 14f would have applied to a discharge occurring as a result of confirmation of an arrangement. In any event, the Eleventh Circuit did not address § 14f.

The Court concludes that the proper reading of the holding of *Gulf Life Insurance* is that the third party defendant simply did not show the existence of a bankruptcy discharge. Its reference to the bankruptcy discharge as an "affirmative defense" is, at best, dicta that does not decide the question of the effect of Bankruptcy Act § 14f. In any event, the case is distinguishable because it arose under the Bankruptcy Act whereas the Court deals here with issues under the Bankruptcy Code.

it. Both §§ 524(a)(1) and (a)(2) expressly state, however, that their protections with regard to a discharged debt apply "whether or not discharge of such debt is waived." Thus, the Court concludes that the Debtor's failure to assert his bankruptcy discharge at an earlier time did not waive its protections [35] and does not estop him from asserting it in this proceeding.[36]

## D. Effect of the Magistrate Court's Judgment

The Court must determine whether the Magistrate Court's judgment is binding on the Debtor as a determination that the debt was excepted from the Debtor's discharge. The theory, adopted by some courts,[37] rests upon two correct principles: a state court has concurrent jurisdiction with the bankruptcy court to determine whether a debt is excepted from discharge under 28 U.S.C. § 1334(b), and the judgment of a court with jurisdiction is preclusive even if its judgment is wrong under the full faith and credit statute, 28 U.S.C. § 1738. Another principle invoked to support this conclusion is that, under the *Rooker–Feldman* doctrine, a bankruptcy court does not have jurisdiction to review an erroneous state court judgment.

For reasons explained below, the Court concludes that § 524(a) changes the effect of these principles in the context of enforcement of the discharge injunction and determination of whether a judgment is void and do not preclude a bankruptcy court from determining that a state court judgment is void.

## 1. The *Rooker–Feldman* Doctrine

Because the *Rooker–Feldman* doctrine involves a question of subject-matter jurisdiction, the Court begins with consideration of that issue.

The *Rooker–Feldman* doctrine derives from two cases decided by the Supreme Court, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine holds that a district court lacks subject-matter jurisdiction to review a prior judgment of a state court.

In *Exxon Mobil Corporation v. Saudi Basic Industries Corporation,* 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), the Supreme Court clarified the scope of the *Rooker–Feldman* doctrine. The Supreme Court summarized its ruling, *id.* at 284, 125 S.Ct. 1517:

> The *Rooker–Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dis-

---

**35.** *E.g., In re Kimmel,* 378 B.R. 630 (9th Cir. BAP 2007); *In re Gurrola,* 328 B.R. 158, 170 (9th Cir. BAP 2005) ("[T]he defense of discharge in bankruptcy is now an absolute, nonwaivable defense."); *In re Jones,* 389 B.R. 146 (Bankr.D.Mont.2008). *But see Gagan v. American Cablevision, Inc. (In re Gagan ),* 77 F.3d 951, 967–68 (7th Cir.1996).

**36.** *E.g., In re Kimmel,* 378 B.R. 630 (9th Cir. BAP 2007); *In re Gurrola,* 328 B.R. 158, 170 (9th Cir. BAP 2005).

**37.** *E.g., In re Candidus,* 327 B.R. 112 (Bankr. E.D.N.Y.2005); *In re Toussaint,* 259 B.R. 96 (Bankr.E.D.N.C.2000); *see Barsh v. State of Maryland Central Collection Unit,* 197 Fed. Appx. 208 (4th Cir.2006) (Unpublished).

miss proceedings in deference to state-court actions.

■ The rule announced in *Exxon Mobil Corporation* controls this case. Section 524(a) provides a statutory injunction against the commencement of an action to collect a debt that is discharged. A discharge injunction under § 524(a) thus exists before the state court judgment. The *Rooker–Feldman* doctrine, therefore, does not deprive this Court of subject-matter jurisdiction to determine the extent to which the later judgment of the Magistrate Court violated the earlier discharge injunction and whether the later judgment is void.[38]

## 2. Preclusive Effect of Magistrate Court Judgment

The question of the effect of the Magistrate Court's judgment in this proceeding is an issue of claims preclusion, not subject-matter jurisdiction under the *Rooker–Feldman* doctrine. The Court assumes, without deciding, that Georgia law would give claims preclusive (traditionally referred to as "res judicata"[39]) effect to the judgment, *i.e.*, the Georgia courts would rule that the Magistrate Court's determination that the debt in question was excepted from discharge is a final determination that is binding on the parties in later litigation and precludes a collateral attack on the judgment in a later proceeding.

■ The full faith and credit statute, 28 U.S.C. § 1738, provides that the judg-ment of a state court "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory, or Possession from which they are taken." A federal court must, therefore, give to a state court judgment the same preclusive effect that it has under state law unless an express or implied exception to the full faith and statute exists. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380–81, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).

■ The test for whether an exception to the full faith and credit statute exists "depend[s] on the particular federal statute as well as the nature of the claim or issue involved in the subsequent federal action.... [T]he primary consideration must be the intent of Congress." *Marrese*, 470 U.S. at 386, 105 S.Ct. 1327.

The Supreme Court expressed a similar principle in *Kalb v. Feuerstein*, 308 U.S. 433, 438–39, 60 S.Ct. 343, 84 L.Ed. 370 (1940) (footnotes omitted):[40]

> It is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack. But Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor

**38.** *See, e.g., Barsh v. Maryland Central Collection Unit,* 197 Fed.Appx. 208, 211–12 (4th Cir.2006).

**39.** *See supra,* note 22.

**40.** The holding of *Kalb v. Feuerstein* is distinguishable because its controversy involved the exclusive jurisdiction of the bankruptcy court over the property of the debtor that was the subject of a foreclosure in the state court proceeding and the effect of an automatic stay on the proceeding. Nevertheless, the principle expressed in the quoted language informs the proper meaning and operation of § 524(a) in this matter concerning concurrent jurisdiction under 28 U.S.C. § 1334(b) and § 524(a)(1)'s use of the term "void." *See Lone Star Security Video, Inc. v. Gurrola (In re Gurrola),* 328 B.R. 158, 167–69 (9th Cir. BAP 2005).

whom the bankruptcy law protects nullities and vulnerable collaterally.

 This Court concludes that Congress enacted § 524(a) to operate as an implied exception to the usual rules of preclusion applicable under 28 U.S.C. § 1738. The District Court in *Colorado West Transportation, Inc. v. McMahon*, 380 B.R. 911 (N.D.Ga.2007), explained that the finding of an implied repeal of § 1738 is rare and that the "appropriate test for determining whether a statute has implicitly repealed § 1738 is whether there is an 'irreconcilable conflict' between the two federal statutes at issue.'" *Colorado West Transportation, Inc. v. McMahon*, 380 B.R. 911, 917–918 (N.D.Ga.2007) *(quoting Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 381, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996)). The Court concludes that the relationship between 28 U.S.C. § 1738 and 11 U.S.C. § 524 represents just such an "irreconcilable conflict."

 Section 524(a) is specific bankruptcy legislation that renders entry of judgment on an indisputably discharged debt "a nullity" or, using § 524(a)(1)'s term, "void." In this regard, the term "void" as used in § 524(a)(1) is "a term of art with a long history in the law of judgments that equates with the concept of a nullity associated with lack of jurisdiction and the ability to make a 'collateral attack' on a judgment."[41]

Section 524(a)(1) "voids any judgment at any time obtained to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged ..., whether or not discharge of such debt is waived." Section 524(a)(2) enjoins any action to collect a discharged debt.

By providing in § 524(a)(1) that a judgment on a discharged debt obtained *at any time* is *void,* Congress must have intended that the bankruptcy courts have jurisdiction and authority to protect a debtor from the creditor abuses it identified, including use of legal process to collect an indisputably discharged debt after the discharge occurs, notwithstanding a prior judgment that purports to determine that the debt is excepted from discharge. The enactments of § 524(a)(1) and its predecessor reflect a clearly expressed and identified Congressional intent that a debtor be able to rely on the bankruptcy discharge without the burden of establishing her rights under the discharge against a meritless claim that is excepted from discharge and without being subjected to an adverse judgment by failure to defend.[42] Moreover, the § 524(a)(2) injunction loses its teeth if a creditor can avoid its effect with the post-bankruptcy invocation of legal process and obtain a judgment that it clearly prohibits due to a debtor's default or failure to defend competently, completely, or at all in reliance on the discharge.

The entry of the Magistrate Court judgment in this case fits exactly within the types of abuse that Congress intended to eliminate when it enacted § 14f of the Bankruptcy Act in 1970 and that it reiterated when it strengthened the protections of § 14f with the enactment of § 524(a) in the Bankruptcy Code, as the Court has explained in Part III(C) above. Faced with a lawsuit in this case after having received his discharge, the Debtor made his discharge known to the Magistrate Court Although he thus answered the complaint, he did not appear at the trial; he must have thought that his discharge pro-

---

41. *Lone Star Security Video, Inc. v. Gurrola* (*In re Gurrola* ), 328 B.R. 158, 164 (9th Cir. BAP 2005).

42. The legislative history discussed in Part III(C) clearly establishes this intent.

tected him from any further consequences. At the trial, the Landlord produced the Debtor's bankruptcy schedules but failed to advise the Magistrate Court of the critical facts that the Debtor listed the Landlord in the list of creditors and that he had knowledge of the bankruptcy case in time to assert his rights in it, facts clearly essential to proper determination of the dischargeability issue.[43]

In the circumstances of this case, the Court concludes that the Magistrate Court's judgment is not entitled to preclusive effect. Although the Magistrate Court had concurrent jurisdiction under 28 U.S.C. § 1334(b) to address whether the debt was excepted from discharge, it did not have jurisdiction to address the issue on the basis of inadequate facts or to misconstrue the effect of the discharge as a matter of law. In these circumstances, § 524(a)(1) renders the judgment void.

A state court's concurrent jurisdiction with the bankruptcy courts under 28 U.S.C. § 1334(b) to determine the dischargeability of a debt does not extend to jurisdiction to modify the discharge. Thus, courts have held that a state court's judgment that modifies a discharge order is void ab initio under § 524(a) and that an incorrect application of the discharge is equivalent to its modification.[44] The Mag-

istrate Court judgment here effectively modified the Debtor's discharge, denying the Debtor its protections on the ground that the Debtor had not proved that his discharge barred the Landlord's action denied him its benefits. It lacked jurisdiction to modify the discharge, and its judgment is void.

In summary, the Court concludes that because the debt was indisputably discharged as a matter of law, section 524(a)(1) renders the judgment void.[45] To hold otherwise, quite simply, would eviscerate the protections of § 524(a) and permit exactly the types of abuses that Congress intended to prevent, as this case amply demonstrates. Thus, the Court declines to follow the contrary view of cases that, because a state court has concurrent jurisdiction under 28 U.S.C. § 1334(b) to determine whether debts are excepted from discharge, a debtor cannot challenge a state court's erroneous determination of the dischargeability of a debt, either on *Rooker–Feldman* grounds[46] or because the state court determination is entitled to preclusive effect.[47]

### E. Remedy and Damages

▮▮▮ Based on the foregoing, the Court concludes that the Landlord violated

---

43. In this regard, the Court notes that the situation here does not involve a state court's determination of disputed facts after full and fair development of the facts in actual litigation in the state court.

44. *E.g., Hamilton v. Hamilton (In re Hamilton)*, 540 F.3d 367, 375 (6th Cir.2008); *In re Pavelich*, 229 B.R. 777 (9th Cir. BAP 1999).

45. *See, e.g., Hamilton v. Hamilton (In re Hamilton)*, 540 F.3d 367, 373 (6th Cir.2008); *Lone Star Security & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158 (9th Cir. BAP 2005); *In re Pavelich*, 229 B.R. 777 (9th Cir. BAP 1999); *In re Dabrowski*, 257 B.R. 394 (Bankr.S.D.N.Y.2001); *In re Cruz*, 254 B.R.

801, 812–13 (Bankr.S.D.N.Y.2000); 4 COLLIER ON BANKRUPTCY ¶ 524.02[1] at 524–20 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("A bankruptcy court can find that a postpetition state court judgment is void despite the full faith and credit normally given to state court judgments."). *See also In re Keenom*, 231 B.R. 116, 128 (Bankr.M.D.Ga.1999).

46. *E.g., In re Barsh*, 197 Fed.Appx. 208 (4th Cir.2006) (unpublished).

47. *Ferren v. Searcy Winnelson Co. (In re Ferren)*, 203 F.3d 559 (8th Cir.2000); *In re Candidus*, 327 B.R. 112 (Bankr.E.D.N.Y.2005); *In re Toussaint*, 259 B.R. 96 (Bankr.E.D.N.C. 2000).

the discharge injunction by proceeding to attempt to collect a discharged debt and that the judgment of the Magistrate Court is void. As a remedy, the Court will order that the Landlord cause the judgment to be marked cancelled and satisfied; that he dismiss the action against the Debtor in the Magistrate Court; and that he take any other appropriate action reasonably requested by the Debtor to evidence the fact that the judgment is void.

The Debtor also seeks monetary sanctions for the Landlord's violation of the discharge injunction, which the Court is authorized to award because violation of the discharge injunction is punishable by contempt. *See, e.g., In re Dabrowski,* 257 B.R. 394, 415 (Bankr.S.D.N.Y. 2001); *In re Cruz,* 254 B.R. 801, 816 (Bankr.S.D.N.Y.2000). The Court concludes, however, that an award of monetary sanctions is not appropriate. The Debtor has not identified any specific damages that he suffered. Moreover, the Debtor's conduct in some sense has contributed to his own problem because he did not clearly and unequivocally assert his bankruptcy discharge in discussions with the Landlord. While the Debtor's conduct cannot amount to a waiver of his discharge or estop him from asserting it, it does provide a basis for concluding that the Landlord should not be sanctioned.

### IV. Conclusion

For the reasons set forth above, the Court concludes that the Landlord violated the discharge injunction of § 524(a)(2); that the judgment he obtained in the Magistrate Court is void under § 524(a)(1); that the Landlord should be required to mark the judgment cancelled and satisfied, to dismiss the action against the Debtor in the Magistrate Court, and to take any other appropriate action reasonably requested by the Debtor to evidence the fact

that the judgment is void; and that the Debtor is not entitled to sanctions for the Landlord's violation of the discharge injunction.

The Court will enter a Final Judgment in accordance with this opinion.